**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LAUSTEVEION JOHNSON,

Plaintiff

v.

DAVID WILLIS, et al.,

Defendants

Case No.: 2:17-cv-01121-APG-DJA

**Order (1) Dismissing Defendant Gentry; (2) Denying Motions for Oral Argument; (3) Granting in Part Defendants' Motion for Summary Judgment; and (4) Denying Plaintiff's Motion for Summary Judgment**

[ECF Nos. 38, 42, 45, 48]

Plaintiff Lausteveion Johnson is an inmate currently incarcerated at Lovelock Correction Center. He brings this lawsuit based on incidents that took place while he was held at Southern Desert Correctional Center (SDCC). Following screening and Johnson's voluntary dismissal of some of his claims, three claims remain.[1] First, Johnson asserts a First Amendment retaliation claim against defendant Rashonda Smith for filing a notice of charges against him and for ordering other correctional officers to search his cell in retaliation for filing grievances and a lawsuit against Smith. Second, Johnson asserts a First Amendment retaliation claim against defendant Douglas Thrasher for searching Johnson's cell, leaving the cell a mess after the search, filing a notice of charges, and stepping on Johnson's prayer rug in retaliation for writing grievances and lawsuits against Smith and another correctional officer, David Willis. Third, Johnson asserts an Establishment Clause claim against Thrasher for stepping on Johnson's prayer rug during the search.

---

[1] After screening, a First Amendment retaliation claim remained against defendant Jo Gentry. However, Johnson never served Gentry. *See* ECF Nos. 26, 27. I therefore dismiss that claim without prejudice.

Smith and Thrasher move for summary judgment. Smith, who is a law librarian at SDCC, argues that there is no evidence she knew that Willis caused Johnson to miss his appointment at the library. She knew only that Johnson missed his appointment, which resulted in her filing a notice of charges against Johnson as required by the SDCC operating procedures. She also contends she has no authority to order correctional officers to conduct a cell search and she did not ask any officers to search Johnson's cell. Alternatively, she contends she is entitled to qualified immunity because Johnson has no constitutional right to not be written up for violating prison rules.

Thrasher, who is a correctional officer at SDCC, argues that he is entitled to summary judgment because he did not search Johnson's cell in retaliation. Rather, he contends he was conducting a random cell search during which he found contraband in the cell's shared area, so he wrote up both inmates. Thrasher also denies he left Johnson's cell in disarray or stepped on Johnson's prayer rug. Alternatively, he argues he is entitled to qualified immunity because Johnson has no constitutional right to not be subject to random cell searches or to have contraband in his cell. Thrasher also contends that the Establishment Clause does not apply to his conduct as an individual correctional officer (as opposed to legislative enactments that might establish a state religion), and there is no clearly established law putting him on notice that he would violate Johnson's rights under the Establishment Clause by stepping on a prayer rug.

Johnson responds that he filed multiple grievances against Smith and that Smith became aware he had filed a lawsuit against her shortly before the incidents in question. He contends that Willis intentionally prevented him from attending his law library appointment, which then allowed Smith to make good on her threat to write up Johnson. He asserts that on one occasion, Smith told him she was going to send someone to "holla" at him and about 20 minutes later,

Thrasher searched and trashed his cell. According to Johnson, Thrasher placed Johnson's prayer rug on the bottom bunk and then stepped on it to look at the top bunk. Johnson contends his cellmate admitted the contraband was his and not Johnson's, but Thrasher nevertheless wrote Johnson up for it. He thus argues there are issues of fact. As to qualified immunity, Johnson asserts that it was clearly established that correctional officers could not engage in this conduct in retaliation for his filing grievances and lawsuits. In addition to opposing the defendants' motion, Johnson moves for summary judgment on his claims against Smith and Thrasher.[2]

I deny Johnson's motion because a reasonable jury could accept Smith and Thrasher's testimony and find they did not retaliate against Johnson. I deny the defendants' motion as to Johnson's First Amendment retaliation claim because the jury will need to resolve fact disputes and credibility determinations. I grant the defendants' motion as to Johnson's Establishment Clause claim because Thrasher is entitled to qualified immunity for that claim.

## I. BACKGROUND

Johnson filed grievances against Smith in late 2016 and early January 2017, and he filed a lawsuit in January 2017 that included Smith as a defendant. ECF Nos. 40 at 18-50; 40-3 at 23-24. On January 14, 2017, Johnson filed a grievance in which he stated that Smith told him that because he writes her up, she was going to find a way to write him up too. ECF No. 40 at 37. According to Johnson, Smith stated that she knew how to write him up to get his freedom denied, that his writeups on her did nothing to her because the state would pay damages even if he won, and that he would learn not to play with her. *Id.*; *see also* ECF No. 40-3 at 36.

---

[2] Johnson has twice moved for oral argument. ECF Nos. 45; 48. This matter is suitable for resolution without a hearing. *See* LR 78-1 ("All motions may be considered and decided with or without a hearing."). I therefore deny those motions.

On January 26, 2017, correctional officer Willis closed the unit's steel gate on Johnson, causing him head injuries. ECF No. 40-1 at 7; *see also* ECF No. 40-3 at 31-33 (two other inmates averring that they saw Willis close the gate on Johnson multiple times). Johnson states that Willis tried to do the same thing the next day and would not allow him to safely exit the unit, so he missed his appointment at the law library. ECF Nos. 40-1 at 7, 28; 40-3 at 36. The day after he missed his appointment, Johnson told Smith that he missed the appointment because Willis would not allow him to exit through the gate. ECF No. 40-3 at 36. According to Johnson, Smith responded, "I know." *Id.*

On January 30, Smith wrote a notice of charges[3] against Johnson because he did not show for his January 27 appointment. ECF No. 38-4 at 10. She contends that she did so in conformity with SDCC operational procedure 722 (OP 722), which governs inmate legal access. ECF No. 38-2. Attached to OP 722 is an example of a memorandum authored by Smith and sent to SDCC inmates that sets forth the law library schedule for various units in the prison. *Id.* at 15. That memorandum states that failure to show for an appointment at the law library will result in a notice of charges. *Id.*

On February 2, Johnson had another appointment for the law library and, according to Johnson, Willis again tried to prevent him from making it. ECF No. 40-1 at 38. Another inmate also had an appointment, so Willis let them both leave, but Willis made Johnson late for his appointment. *Id.* at 38-39. Johnson states that after he arrived at the law library, Smith was angry and told him that she was going to "send them to holla [sic] at yo [sic] ass." *Id.* Johnson

[3] Under Nevada Department of Corrections Administrative Regulation 707, after a notice of charges is filed, the inmate is provided with a hearing at which the inmate can call witnesses and present documentary evidence. ECF No. 38-3. Johnson was afforded a hearing to challenge Smith's notice of charges, at which he was adjudged guilty of failing to follow the rules. ECF No. 38-4 at 6-8, 11. His appeal was denied. *Id.* at 2-5.

interpreted this to mean Smith was going to send correctional officers to search his cell. *Id.* Thrasher searched Johnson's cell about 20 minutes later. ECF No. 40-3 at 35.

Thrasher contends he conducted the search based on Administrative Regulation 422, which allows random cell searches for, among other reasons, control of contraband inside the prison. ECF Nos. 38-7 at 3; 38-3 at 3. Thrasher found 19 pieces of fruit in the cell, which inmates use to create prison-made alcohol known as pruno. ECF No. 38-7 at 3. According to Thrasher, the fruit was in the cell's common area. *Id.* Johnson asserts the fruit was in his cellmate's area. ECF No. 40-3 at 36. Johnson's cellmate admitted the fruit was his, but in Thrasher's experience, inmates will take the blame for one another because favors are a form of currency in prison. ECF No. 38-7 at 3. Thrasher states that "[a]s is standard," he issued both inmates a notice of charges. *Id.* The notice of charges against Johnson was later dismissed. ECF No. 38-10.

Johnson's account of the incident differs from Thrasher's. According to Johnson, Thrasher entered the unit, told Willis that he had Willis's back, and asked "where is he?" ECF No. 40-1 at 31; *see also* ECF No. 40-3 at 35 (Johnson describing it slightly differently by stating that Thrasher asked Willis who was inmate Johnson). Willis pointed at Johnson. ECF No. 40-1 at 31. Thrasher and another correctional officer then walked up to him and asked if he was Johnson. *Id.* When he said yes, Thrasher responded "you're who we're looking for." *Id.* Thrasher then searched and trashed Johnson's cell. *Id.* at 35-36. Thrasher also took Johnson's prayer rug off of the top bunk, set it on the bunk frame, and then stepped on it to get to the top bunk. *Id.* The next day, Smith stated to Johnson that she had told him that she was sending them, and she asked how he liked it. ECF No. 40-1 at 38.

Smith denies she knew why Johnson did not make his library appointment and she denies that she filed a notice of charges against him because of any grievances or lawsuits. ECF No. 38-1 at 3. She also denies having authority over correctional officers and did not request they search Johnson's cell in retaliation for filing grievances or lawsuits. *Id.* Thrasher likewise denies that he searched Johnson's cell on orders or request of any other official or in retaliation for Johnson filing grievances or lawsuits. ECF No. 38-7 at 3. He also denies that he trashed Johnson's cell or stepped on the prayer rug. *Id.* at 4.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

To establish liability under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). The defendants do not dispute that they acted under color of law, so the question is whether they violated Johnson's constitutional rights.

In addition to disputing Johnson's claims on the merits, the defendants assert the defense of qualified immunity. I apply "a two-prong analysis to determine whether officials are entitled to qualified immunity: (1) whether the facts alleged show that the officer violated a constitutional right; and (2) if so, whether that right was clearly established at the time of the event." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1075 (9th Cir. 2011). I may address these questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to the first question, I view the facts in the light most favorable to the plaintiff to determine whether the evidence shows the defendant's conduct violated a constitutional right. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). If the plaintiff has shown the defendant violated a constitutional right, I then must determine whether that right was clearly established. *Id.* A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). I make this second inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 200. The plaintiff bears the burden of showing that the right at issue was clearly established. *Sorrels*, 290 F.3d at 969.

/ / / /

/ / / /

**A. First Amendment Retaliation**

Prisoners have a First Amendment right to file prison grievances and civil lawsuits and to be free from retaliation for doing so. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). A First Amendment retaliation claim has five elements. First, the plaintiff must show he engaged in activity protected by the First Amendment. *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012). Filing an inmate grievance is a protected activity. *Id.*

Second, the plaintiff must show the defendant took adverse action against him. *Id.* "The adverse action need not be an independent constitutional violation," and the "mere threat of harm" may suffice. *Id.* (emphasis and quotation omitted).

"Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* A close proximity in time between the protected activity and the adverse action "can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Fourth, the plaintiff must show that the defendant's acts "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quotation omitted). The plaintiff does not have to show that the defendant actually suppressed his speech. *Rhodes*, 408 F.3d at 568. Evidence "that his First Amendment rights were chilled, though not necessarily silenced, is enough . . . ." *Id.* at 569. However, the plaintiff must show the harm he suffered was "more than minimal." *Watison*, 668 F.3d at 1116 (quotation omitted).

Finally, the plaintiff must show that the defendant's retaliatory act "did not advance legitimate goals of the correctional institution." *Id.* (quotation omitted). To establish this element, the plaintiff must show the defendant not only acted with a retaliatory motive, but also

that the defendant's actions "were arbitrary and capricious," or "were unnecessary to the maintenance of order in the institution." *Id.* (quotation omitted).

1. Johnson's Motion for Summary Judgment

Viewing the facts in the light most favorable to Smith and Thrasher on Johnson's motion, a reasonable jury could find in their favor. Smith denies that she knew why Johnson missed his appointment and denies that she filed a retaliatory notice of charges or requested a retaliatory search. Rather, she contends that she followed OP 722 by filing a notice of charges because he missed his appointment and that she did not ask anyone to search his cell. Thrasher avers that he conducted a random search and he denies he acted with a retaliatory motive. He explained why he wrote up both inmates for the contraband and denies that he trashed Johnson's cell or stepped on the prayer rug. If a jury credited this testimony, it could find in the defendants' favor. Credibility is "a determination that is exclusively within the province of the factfinder at trial, not the district court on summary judgment." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005). I therefore deny Johnson's motion.

2. The Defendants' Summary Judgment Motion as to Smith

Viewing the facts in the light most favorable to Johnson on the defendants' motion, a reasonable jury could find that Johnson engaged in protected activity by filing grievances and a lawsuit against Smith and that Smith took adverse action against him by threatening him with writeups, filing a notice of charges against him, and requesting other officers to search his cell. Although Smith denies she has the power to direct officers to conduct a search, Johnson avers that Smith told him she was going to send someone to "holla" at him, about 20 minutes later Thrasher searched his cell, and the next day Smith stated that she had told Johnson she would

send them and asked how he liked it. If a jury credited this testimony, it could find Smith requested Thrasher to conduct the search.

A reasonable jury also could find a causal connection between Smith's alleged acts and Johnson's protected activity. According to Johnson, Smith threatened him with retaliation just a few days before these incidents and specifically referred to his writing her up as the reason she was going to find a way to write him up. A reasonable jury also could find that retaliatory notices of charges and cell searches that leave the cell in disarray would chill or silence a person of ordinary firmness from future First Amendment activities. *See, e.g.*, *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (holding even threats of discipline would suffice); *Parks v. Wren*, 651 F. App'x 597, 599 (9th Cir. 2016) (same for allegations that the officer searched the cell, destroyed property, and left the cell in "total discombobulation").

Finally, a reasonable jury could find that a law librarian's request for a retaliatory cell search is arbitrary and capricious and not necessary to maintain order. Although a closer call, a reasonable jury also could find Smith's notice of charges was arbitrary and capricious or not necessary to maintain order. Smith applied a neutral rule of general application when she filed the notice of charges against Johnson because OP 722 provides that missed appointments will result in a notice of charges. But if Smith used OP 722 "as a cover or a ruse to silence and punish [Johnson] because he filed grievances, [she] cannot assert that [her notice of charges] served a valid penological purpose." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). "[P]rison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Id.* Smith is not entitled to qualified immunity on this claim because "*Bruce* clearly established that

prison officials may not abuse a valid procedure as a cover or a ruse to silence and punish an inmate." *Shepard v. Quillen*, 840 F.3d 686, 694 (9th Cir. 2016) (quotation omitted). I therefore deny the defendants' motion for summary judgment as to Smith on this claim.

2. Thrasher

Viewing the facts in the light most favorable to Johnson on Thrasher's motion, a reasonable jury could find that Johnson engaged in protected activity by filing grievances and a lawsuit against Smith and Willis, and that Thrasher took adverse action against him by conducting a retaliatory search, filing a notice of charges against him, stepping on his prayer rug, and trashing his cell.

A reasonable jury also could find a causal connection between Thrasher's alleged acts and Johnson's protected activity. According to Johnson, Smith told him she was going to send someone after him and 20 minutes later Thrasher searched and trashed his cell and filed a notice of charges. Thrasher did so after allegedly telling Willis he had Willis's back and stating that he was looking for Johnson, suggesting this was not a random search after all. He also allegedly got angry when Johnson's cellmate tried to take the blame for the contraband, which a jury could infer was because he was looking to write up Johnson. A reasonable jury also could find that retaliatory notices of charges, cell searches, trashing the cell, and disrespecting inmate property would chill or silence a person of ordinary firmness from future First Amendment activities.

Finally, a reasonable jury could find Thrasher's actions were arbitrary and capricious or unnecessary to maintain order. Certainly, control of contraband is necessary to maintain order in a prison. But a reasonable jury could conclude that a retaliatory cell search, notice of charges, trashing of a prisoner's cell, and stepping on a prayer rug are arbitrary and capricious or not necessary to maintain order. Whether the cell search was random or targeted retaliation is a

question of fact for the jury. Like Smith, Thrasher cannot rely on the prison's use of random searches as a cover or a ruse to silence and punish Johnson for filing grievances, and he is not entitled to qualified immunity for the same reason as Smith. I therefore deny the defendants' motion for summary judgment as to Thrasher on this claim.

**B. Establishment Clause**

Johnson does not identify any clearly established law that would have put Thrasher on notice that stepping on a prayer rug would violate Johnson's rights under the First Amendment's Establishment Clause. Consequently, Thrasher is entitled to qualified immunity on this claim. I therefore grant Thrasher's motion and deny Johnson's motion on this claim.

**II. CONCLUSION**

I THEREFORE ORDER that plaintiff Lausteveion Johnson's First Amendment retaliation claim against defendant Jo Gentry is DISMISSED without prejudice for failure to timely serve her. The clerk of court is instructed to terminate Jo Gentry as a party in this action.

I FURTHER ORDER that plaintiff Lausteveion Johnson's motions for oral argument **(ECF Nos. 45, 48) are DENIED**.

I FURTHER ORDER that the defendants' motion for summary judgment **(ECF No. 38) is GRANTED in part**. The motion is granted as to plaintiff Lausteveion Johnson's Establishment Clause claim. The motion is denied as to plaintiff Lausteveion Johnson's First Amendment retaliation claims against defendants Rashonda Smith and Douglas Thrasher.

I FURTHER ORDER that plaintiff Lausteveion Johnson's motion for summary judgment **(ECF No. 41) is DENIED**.

DATED this 23rd day of April, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE